Michael A. Hirst (CA Bar No. 131034)
michael.hirst@hirstlawgroup.com
Marisela Bernal (CA Bar No. 329589)
marisela.bernal@hirstlawgroup.com
HIRST LAW GROUP, P.C.
200 B Street, Suite A
Davis, CA 95616
Telephone: (530) 756-7700
Facsimile: (530) 756-7707

Counsel for Plaintiff-Relators
Sunil Wadhwa and Emily Prins

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF ILLINOIS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF TENNESSEE, AND STATE OF TEXAS ex rel. SUNIL WADHWA and EMILY PRINS,

Plaintiffs,

v.

PROGRESS MEDICAL LLC; AMNIO TECHNOLOGY, LLC; BIOLAB SCIENCES, INC.; BIOLAB HOLDINGS, INC.; BLS LABS, LLC; BIOSTEM TECHNOLOGIES, INC.; DIRECT BIOLOGICS, INC. f/k/a DIRECT BIOLOGICS, LLC; HEALTHTECH WOUND CARE, INC.; LEGACY MEDICAL CONSULTANTS, LP; MLM BIOLOGICS, INC.; PINNACLE TRANSPLANT TECHNOLOGIES, LLC; PRECISE BIOSCIENCE CORPORATION; REDDRESS USA, INC.; ROYAL BIOLOGICS, INC.; SAMARITAN BIOLOGICS LLC; STRATUS BIOSYSTEMS, LLC d/b/a CELLGENUITY REGENERATIVE SCIENCE; SURGENEX, LLC; XTANT

**Civil Action No: 2:25-CV-07049-SVW (AGRx)**

**RELATORS' PARTIAL OPPOSITION TO UNITED STATES' MOTION TO DISMISS**

MEDICAL HOLDINGS, INC.; BLS SALES AND MARKETING, LLC; WORLD REACH HEALTH, LLC; VENTURE MEDICAL LLC; AND DOES 1–20,

Defendants.

## Table of Contents

**INTRODUCTION AND SUMMARY ..... 5**

**FACTS ..... 7**

**ARGUMENT ..... 10**

I. AS THE GOVERNMENT HAS RECOGNIZED, RELATORS PLAY AN ESSENTIAL ROLE IN THE SUCCESS OF FALSE CLAIMS ACT CASES. ..... 10

II. THE GOVERNMENT'S DISMISSAL UNDER SECTION 3730(c)(2)(A) SHOULD BE TREATED LIKE A DECLINATION FOR PURPOSES OF RELATORS' ALTERNATE REMEDY RIGHTS. ..... 12

A. The FCA's Language and Structure Support Treating A Government Recovery Against A Dismissed Defendant as A Potential "Alternate Remedy" with The "Same Rights" for Relators ..... 14

B. Polansky Confirms Government Dismissal Authority but Does Not Curtail Section 3730(c)(5). ..... 15

III. RELATORS' REQUEST THAT THE COURT RETAIN JURISDICTION FOR A POTENTIAL ALTERNATE REMEDY CLAIM DOES NOT REQUIRE THE COURT TO DETERMINE THE VALIDITY OF SUCH A CLAIM NOW, NOR DO RELATORS SEEK EXTRAORDINARY RELIEF. ..... 17

V. ALTHOUGH AN IN-PERSON HEARING MAY NOT BE NECESSARY FOR THIS MOTION, THE NINTH CIRCUIT'S PRECEDENT THAT RELATORS ARE ENTITLED TO A HEARING ON A MOTION TO DISMISS NEVERTHELESS REMAINS IN EFFECT. ..... 20

**CONCLUSION ..... 21**

# Table of Authorities

Cases

*United States ex rel. Babalola v. Sharma*
746 F.3d 157, 161–62 (5th Cir. 2014) .......... 14

*United States ex rel. Barajas v. United States*
258 F.3d 1004 (9th Cir. 2001) .......... 12, 17

*United States ex rel. Birkle, et al. v. Medtronic PLC, et al.*
2:19-cv-10960-MEMF-SK, Dkt. no. 103 (C.D. Cal. Dec. 11, 2025) .......... 17

*United States ex rel. Estate of Turner v. Gardens Pharmacy, LLC*
1:18-cv-00338-HSO-BWR, Dkt. no. 154 (S.D. Miss. Jan. 19, 2023) .......... 18

*United States ex rel. Kennedy, et al. v. Novo A/S, et al.*
5 F.4th 48 (D.C. Cir. 2021) .......... 16

*United States ex rel. LaCorte v. Wagner*
185 F.3d 188, 192 (4th Cir. 1999) .......... 14

*United States ex rel. Ling v. City of Los Angeles*
25-249, --- F.4th ----, 2026 WL 2871734 (9th Cir. Sept. 24, 2026). 13, 14, 19

*United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corporation*
51 F.3d 1139 (9th Cir. 1998) .......... 20

*United States ex rel. Shutt v. Cmty. Home & Health Care Servs., Inc.*
550 F.3d 764 (9th Cir. 2008) .......... 17

*United States ex rel. Singh v. Paksn, Inc. et al.*
2:15-cv-09064-SB-AGR, Dkt. no. 472 (C.D. Cal. Nov. 17, 2023) .......... 17

*United States v. L-3 Communications EOTech, Inc.*
921 F.3d 1 (2nd Cir. 2019) .......... 16

Statutes

31 U.S.C. § 3730(b) .......... 8, 13, 14, 16

31 U.S.C. § 3730(c) .......... passim

31 U.S.C. § 3730(d) .......... 17

Rules

Federal Rule of Civil Procedure 41 .......... 16, 17

Other Authorities

S. Rep. No. 99-345 (1986) .......................................................................... 10, 11

Jacob T. Elberg, *Health Care Fraud Means Never Having to Say You're Sorry*, 96 WASH. L. REV. (Issue 2) 371 (2021) ........................................................ 19

## INTRODUCTION AND SUMMARY

Plaintiff-Relators Sunil Wadhwa and Emily Prins ("Relators") partially oppose the United States' Motion to Dismiss on limited grounds.

Following the Supreme Court's decision in *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023), ("*Polansky*"), Relators recognize that the United States ("Government") has broad authority to dismiss False Claims Act ("FCA") *qui tam* cases filed by relators. But the *Polansky* decision, which analyzed the Government's dismissal authority under 31 U.S.C. § 3730(b)(2), of course does not invalidate other aspects of the FCA. The statute's other provisions continue to apply, including the "alternate remedy" provision in 31 U.S.C. § 3730(c)(5).

In light of *Polansky*, Relators have advised the Government of their willingness to stipulate to a voluntary dismissal of the complaint without prejudice, such that the Court would retain jurisdiction for a potential alternate remedy motion. Such a stipulation would disallow Relators from continuing to litigate the case but would retain jurisdiction for the Court to determine if a subsequent recovery by the Government against one or more dismissed Defendants implicates the FCA's alternate remedy provision. Declaration of Michael A. Hirst (Hirst Declaration) (to be filed under seal[1]), ¶ 27 (Exhibit 8). The Government initially believed the appropriate course of action was a dismissal without prejudice as to the Relators. (*See* Exhibit 7). However, in its filed motion, the Government moves for dismissal with prejudice on all Relators' claims against all defendants. (Dkt. 21-1).

Relators submit this partial opposition to the Government's requested dismissal on that basis. Relators ask the Court: (1) to retain jurisdiction solely to determine potential post-dismissal motions by the Relators if they believe the FCA's

---

[1] The Government has requested that the declaration and accompanying exhibits be filed under seal.

alternate remedy and relator share provisions apply; and (2) to include in the Court's order that the Government advise Relators of any payments received from a dismissed Defendant and provide the settlement agreement, so that Relators can review the facts and determine if alternate remedy and relator share motions are appropriate.

If applicable, the Court should properly hear an alternate remedy motion under Section 3730(c)(5) to determine the Relators' rights. Such a motion could be warranted if, for example: (1) the Government began an investigation of a Defendant it seeks to dismiss in this action after receiving information and evidence about that Defendant's fraud from the Relators' complaint and subsequent memos provided to the Government, and (2) the Government later obtains a settlement or judgment against that Defendant for fraud without providing any share of the Government's recovery to the Relators, in violation of the FCA's express language and intent.

The Relators do not ask the Court to determine now whether Relators would succeed in a potential alternate remedy motion. Success would depend on the circumstances of a subsequent Government recovery that are not presently known.

However, the Relators' request herein is not merely speculative. The Government has *conceded both verbally and in writing* that at the time the Relators filed their FCA complaint, the Government did *not* have any existing investigation or case against some of the Defendants named in the complaint that the Government now seeks to dismiss. Hirst Declaration, ¶¶ 13, 15 (Exhibit 2). As to the existence of a prior filed complaint against other Defendants named by Relators, Relators have repeatedly asked the Government to follow its typical procedures by seeking a partial lift of the seal to share any such complaint(s). The Government has declined to do so. And, indeed, its motion to dismiss and supporting documents do not assert any facts sufficient to establish that the FCA's "first-to-file" bar in 31 U.S.C. § 3730(b)(5) would apply to Relators' claims against any Defendant.

The Court should allow dismissal of the complaint but retain jurisdiction for a potential alternate remedy motion and, if necessary, a motion for a relator share. Although the Court need not determine now whether such an alternate remedy motion would succeed, the facts and law demonstrate that Relators' request is reasonable and should be granted.

## FACTS

On July 28, 2025, Relators filed their Complaint under seal in this action. (Dkt. no. 1).

On September 29, 2025, after the Government filed an application to extend the seal for six months, and the Court granted a seal extension until December 30, 2025. (Dkt. nos. 7–8).

On October 15, 2025, the Relators were interviewed by eleven federal and state Government attorneys and agents, both in-person and remotely. During the Relator interviews, AUSA Cory Webster explained to Relators that if the Government intervened, it would prosecute the case. If the Government declined to intervene, Relators' counsel would prosecute the case. No mention was made of a prior filed case or existing investigation, and the Government did not suggest that it would move to dismiss the case. Hirst Declaration, at ¶ 11.

On November 18, 2025, AUSA S. Desmond Jui and DOJ Attorney Jonathan Hoerner called Relators' counsel to advise that the Government would send a letter to counsel identifying the Defendants against whom the Government had already commenced investigations or against whom filed cases already existed before Relators' complaint was filed. During the call, Mr. Hoerner identified those Defendants. Hirst Declaration, at ¶13. (At the request of the Government, Relators only provide the names of those Defendants in the Hirst Declaration filed under seal.) Other than the names, no additional details were provided to establish that an FCA case or investigation had begun against any Defendants prior to July 28, 2025,

when Relators' complaint was filed.

On November 18, 2025, after the call and via email, the Government forwarded the letter to Relators' counsel. Consistent with the list of Defendants that the Government previously identified in the telephone call earlier in the day, the letter advised that "The United States Department of Justice, Civil Division, commenced False Claims Act investigations involving the following entities prior to receipt of Wadhwa's and Prins' *qui tam* complaint." Hirst Declaration, at ¶ 15 (Exhibit 2). The letter then listed those entities (while omitting any dates), which did not include all Defendants sued by the Relators.

Indeed, several of the Defendants included in Relators' complaint were not listed as having been investigated by the Government or having been named in any case before the Relators' complaint was filed. Hirst Declaration, at ¶¶ 13, 15 (unredacted version providing the names of the Defendants not listed in Mr. Hoerner's telephone call or letter).

During the call on November 18, 2025, Relators' counsel asked the Government to seek partial lifts of the seal in cases in which another whistleblower had filed a *qui tam* complaint against a Defendant before the Relators had filed their complaint against that same Defendant. Hirst Declaration, at ¶ 14. In Relators' counsel's experience, this is standard DOJ procedure. When multiple *qui tam* cases are filed against the same defendant, DOJ obtains partial lifts of the seals, contacts the sets of relators' counsel, and then encourages the relators to share the complaints with each other. In this way, different relators filing suit against the same defendant can determine the extent to which an overlap of allegations exists that may implicate the "first-to-file" provision in Section 3730(b)(5).[2] However, in this case, the

[2] For example, a typical such letter from the Government, including multiple letters received by the undersigned counsel, states: "Our expectation is that counsel will provide each other with information regarding the allegations against [defendant name], possibly by providing redacted complaints. Please do not hesitate to call if

Government did not agree to do so. Hirst Declaration, at ¶ 14.

Over the next several months, Relators again asked during telephone calls and via email if the Government would follow its typical procedure and obtain partial lifts of the seal so that the Relators in this case and others could review the allegations and determine if the "first-to-file" provision of the FCA was applicable to the Government as well as several States named in the Relator's complaint. The Government again did not agree. Hirst Declaration, at ¶¶ 16–21(Exhibits 3–5).

On July 15, 2026, Mr. Hoerner informed Relators' counsel by telephone that the government intended to intervene for the purpose of moving to dismiss all claims against all Defendants. Hirst Declaration, at ¶ 23.

On July 22, 2026, before the Government filed its Notice of Intervention for Purposes of Dismissal, Relators advised the Government that, in light of the broad dismissal authority in *Polansky*, they would stipulate to voluntary dismissal if the Government agreed that the Court could retain jurisdiction to hear a potential alternate remedy claim. Mr. Jui responded in part, "The U.S. does not agree to the stipulation and believes the appropriate course of action is for Relators to voluntarily dismiss the case unconditionally and without prejudice." Hirst Declaration, at ¶ 27 (Exhibit 7). Mr. Jui then confirmed that the Government intended to proceed with filing a motion to dismiss.

To be clear, Relators are not herein accusing the Government of bad faith in an attempt to deprive them of an appropriate relator share. Relators could not make that accusation because they lack any information on the Government's actions. The Government has declined to provide any.

As such, Relators' counsel is unable to determine or to advise their clients on whether any prior-filed cases exist that allege fraud against the same defendants,

---

you have any questions." Hirst Declaration, ¶6.

whether each includes the same states as plaintiffs, when each case was filed, etc. Instead, the Government has previously advised that, at least for some of the Defendants named by the Relators, no such case or investigation exists.

The Court should dismiss the complaint but should retain jurisdiction to hear Relators' subsequent motions for an alternate remedy and relator share if the facts and circumstances suggest that such motions should be brought.

## ARGUMENT

### I. AS THE GOVERNMENT HAS RECOGNIZED, RELATORS PLAY AN ESSENTIAL ROLE IN THE SUCCESS OF FALSE CLAIMS ACT CASES.

The FCA's *qui tam* provisions, and its amendments, were designed to encourage private enforcement suits. By the time of the 1986 FCA amendments, fraud against the government was endemic. Congress sought to understand "why fraud in Government programs is so pervasive yet seldom detected and rarely prosecuted." S. Rep. No. 99-345, at 4 (1986). Potential whistleblowers were not willing to come forward and provide evidence of fraud to the Government because they believed, in part, "that nothing would be done to correct the activity even if reported." *Id*. at 4–5.

Congress determined that "only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds." S. Rep. No. 99-345, at 2. It decided "to encourage more private enforcement suits." *Id*. at 23–24. Congress's goal was not only to encourage whistleblowers to come forward, but also to empower them to litigate if the government was unable or unwilling to do so.

The Government's dismissal rights in Section 3730(c)(2) and the alternate remedy provision in Section 3730(c)(5) were part of the 1986 FCA amendments. Recognizing that potential relators were frequently deterred due to "a lack of confidence in the Government's ability to remedy the problem," Congress gave relators increased rights even in cases in which the government intervenes. S. Rep.

No. 99-345, at 25. These include the right to act "as a check that the Government does not . . . drop the false claims case without legitimate reason" by "formally object[ing] to any motions to dismiss or proposed settlements between the Government and the defendant." *Id*. at 25–26. In the final statute, Congress made such hearings mandatory. *See* 31 U.S.C. § 3730(c)(2)(A).

The role of FCA whistleblowers continues to be essential to the success of the statute. Much of that success -- indeed most of that success -- is due to *qui tam* relators. Of the record-setting $6.8 billion recovered through FCA litigation in fiscal year 2025, "the Justice Department reported settlements and judgments exceeding $5.3 billion in qui tam suits filed in [fiscal year 2025] and earlier-filed qui tam suits."[3] For that same time period, $2.28 billion were attributable to cases where the United States declined to intervene and the relator continued the litigation, which was over $740 million *more* than Government initiated non-qui-tam FCA recoveries. *Id.* (DOJ Fraud Statistics Overview). According to DOJ's Principal Deputy Assistant Attorney General for the Civil Division, Brian M. Boynton, whistleblowers "have been critical to identifying and pursuing new and evolving fraud schemes that might otherwise remain undetected. They also bring considerable technical expertise to complex investigations."[4] Mr. Boynton emphasized that *qui tams* "were responsible for more than 70 percent of the Department's recoveries [in 2020]" and "will

[3] Press Release, U.S. Dep't of Justice, Off. of Pub. Affairs, False Claims Act Settlements and Judgments Exceed $6.8B in Fiscal Year 2025 (Jan. 16, 2026) (cleaned up), https://www.justice.gov/opa/pr/false-claims-act-settlements-and-judgments-exceed-68b-fiscal-year-2025; U.S. Dep't of Justice, Civil Division, Fraud Statistics Overview (Oct. 1, 1986 – September 30, 2025), https://www.justice.gov/opa/media/1424121/dl.

[4] Press Release, U.S. Dep't of Justice, Off. of Pub. Affairs, Acting Assistant Attorney General Brian M. Boynton Delivers Remarks at the Cybersecurity and Infrastructure Security Agency (CISA) Fourth Annual National Cybersecurity Summit (Oct. 13, 2021), https://www.justice.gov/archives/opa/speech/acting-assistant-attorney-general-brian-m-boynton-delivers-remarks-cybersecurity-and.

continue to be an essential source of new leads" in the future.[5] He specifically singled out relators as critical to the fight against fraud on the Government: "Industry insiders are uniquely positioned to expose fraud and false claims and often risk their careers to bring these schemes to light. . . . Our efforts to protect taxpayer funds benefit from the courageous actions of these whistleblowers, and they are justly rewarded under the False Claims Act."[6]

The Relators in this case are industry insiders who provided to the Government significant, documentary evidence of the fraud they allege in their complaint and memoranda.

## II. THE GOVERNMENT'S INTERVENTION AND DISMISSAL UNDER SECTION 3730(c)(2)(A) SHOULD BE TREATED LIKE A DECLINATION FOR PURPOSES OF RELATORS' ALTERNATE REMEDY RIGHTS.

The FCA's alternate remedy provision applies when the Government elects not to pursue the Relators' case and instead pursues the claim in another forum. 31 U.S.C. § 3730(c)(5). Whether the Government dismisses the Relators' claims or declines to intervene in those claims, the alternate remedy provision still applies.

In *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010 (9th Cir. 2001) (emphasis added), the court stated that an "An alternate remedy under § 3730(c)(5) is a remedy achieved through the government's pursuit of a claim after it has chosen *not to intervene* in a qui tam relator's FCA action." *Barajas* was decided before *Polansky*. Here, pursuant to the Supreme Court's decision in *Polansky*, the

[5] Press Release, U.S. Dep't of Justice, Off. of Pub. Affairs, Acting Assistant Attorney General Brian M. Boynton Delivers Remarks at the Federal Bar Association Qui Tam Conference (Feb. 17, 2021), https://www.justice.gov/archives/opa/speech/acting-assistant-attorney-general-brian-m-boynton-delivers-remarks-federal-bar.

[6] Press Release, U.S. Dep't of Justice, Off. of Pub. Affairs, Justice Department's False Claims Act Settlements and Judgments Exceed $5.6 Billion in Fiscal Year 2021 (Feb. 1, 2022), https://www.justice.gov/archives/opa/pr/justice-department-s-false-claims-act-settlements-and-judgments-exceed-56-billion-fiscal-year.

Government was *required* to intervene in the case before it could move to dismiss. *Polansky*, 599 U.S. at 430 (the Government's dismissal right "applies only if the Government has intervened.").

The Government's filing in its *United States' Notice of Intervention for Purpose of Dismissal*, seeking dismissal of the action, is more than the functional equivalent of its declining to intervene in the Relators' claims. It seeks to eliminate the Relators' claims and rights to an award in the event of a recovery against any of the Defendants. After intervening and moving to dismiss the case, should the government choose to pursue Relators' fraud allegations against Defendants in another forum, the purpose and intent of the alternate remedy provision comes into play with equal force.

Section 3730(c)(5) (emphasis added) guarantees that *"[n]otwithstanding subsection (b)*, the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty," and that "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section." Subsection (b) of Section 3730 gives the Government the choice of whether to intervene in a relator's case (Section (b)(4)(A)) or decline to intervene (Section (b)(4)(B)). Either way, the FCA provides "notwithstanding" that decision -- whether the Government intervenes or not -- the alternate remedy provision applies to protect Relators' interests ("the person initiating the action shall have the same rights in such proceeding").

The Ninth Circuit recently discussed application of the alternate remedy provision when a relator is not able to go forward with an FCA case. In *United States ex rel. Ling v. City of Los Angeles,* No. 25-249, --- F.4th ----, 2026 WL 2871734 (9th Cir. Sept. 24, 2026), the Court held:

> By stating that the relator has the same rights to alternate remedies as they "would have had *if the action had continued under this section*,"

> [31 U.S.C. § 3730(c)(5)] (emphasis added), the alternate remedy provisions assumes an alternate remedy takes the place of the FCA suit.

*Id.* at *4. As the *Ling* court explained, "the alternate remedy provision 'preserves the rights of the original qui tam plaintiffs when the government resorts to an alternate remedy *in place of the original action*.'" *Id.*, *quoting United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 192 (4th Cir. 1999) (emphasis in original). "[C]learly, this language protects the rights of the relators once the Government elects to pursue an alternate remedy and assumes that the original qui tam action did not continue." *Id.*, *quoting United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 161–62 (5th Cir. 2014) (*quoting LaCorte*, 185 F.3d at 192) (internal quotations omitted). That is precisely the outcome the Government is pursuing through its motion.

In essence, the Government should not be allowed to: learn of fraud from the Relators; recognize that one or more defendants specifically identified by Relators has caused the Government to incur significant losses from the fraud; decide not to allocate any of its fraud recovery to Relators; take advantage of its broad dismissal authority under *Polansky*; and then engage in a settlement with Defendants that frustrates the purpose of the FCA by eliminating a share right for Relators.

### A. The FCA's Language and Structure Support Treating A Government Recovery Against A Dismissed Defendant as A Potential "Alternate Remedy" with The "Same Rights" for Relators.

Reading Section 3730(c)(5) to depend on a case's intervention or declination status would nullify the FCA's "[n]otwithstanding" clause and the "same rights" guarantee, permitting the Government to erase those rights by dismissing and relitigating elsewhere. The correct reading of the FCA is that once the Government obtains recovery for the same fraud through an "alternate remedy," the Relators' rights mirror those they would have had if the Relators' *qui tam* case had continued, but for the Government's dismissal.

This approach fits the Act's structure. Section 3730(b) governs the Government's threshold election to intervene or decline; Section 3730(c)(2) supplies

dismissal power when the Government has intervened; and Section 3730(c)(5) separately preserves relator rights when the Government "elect[s] to pursue its claim through any alternate remedy." Where the Government secures recovery outside the Relators' *qui tam* case after moving to dismiss it, the election to "pursue its claim" has been made through an alternate remedy. The statutory consequence is that the relator keeps "the same rights."

B. Polansky Confirms Government Dismissal Authority but Does Not Curtail Section 3730(c)(5).

In *Polansky*, the Supreme Court held that the Government may move to dismiss a *qui tam* case under Section 3730(c)(2)(A) after intervention. It applied Federal Rule of Civil Procedure 41's framework to the motion to dismiss. But the *Polansky* court did not address Section 3730(c)(5) and certainly nothing in *Polansky* eliminated or narrowed that provision.

Instead, *Polansky* addressed the mechanism and standard for dismissal of a *qui tam* case; it did not decide whether, after dismissal, the Government's pursuit of the same claims through another proceeding constitutes an "alternate remedy" for which relators have "the same rights." *Polansky*'s reasoning about party status and case management does not conflict with Section 3730(c)(5)'s "[n]otwithstanding subsection (b)" clause or its "same rights" directive.

Reading *Polansky* to silently displace Section 3730(c)(5) would contravene principles of ordinary statutory interpretation. Section 3730(c)(5) is a specific provision that speaks directly to an alternate remedy and relator rights; *Polansky* construed Section 3730(c)(2)(A)'s dismissal authority and Rule 41 practice. The two provisions operate in different lanes: dismissal governs what happens to the *qui tam* case; the alternate remedy provision governs what happens when the Government recovers elsewhere. The alternate remedy provision remains fully operative after *Polansky*.

Indeed, Relators have found no case holding that a relator's alternate remedy

rights are extinguished by a Government-initiated Section (c)(2)(A) intervention and dismissal. Instead, courts have previously rejected a suggestion that the alternate remedy provision disappears if the Government intervenes in a case, for dismissal or otherwise.

The Court of Appeals for the D.C. Circuit has expressly recognized that the permissibility of an alternate remedy recovery for relators should not turn on the Government's intervention or declination decision, citing to the Second Circuit when it stated: "Given the statutory text and structure, we doubt that the district court was correct in holding that the permissibility of an alternate remedy recovery turns on the government's intervention decision." *United States ex rel. Kennedy, et al. v. Novo A/S, et al.*, 5 F.4th 48, 56 n.6 (D.C. Cir. 2021), *citing United States v. L-3 Communications EOTech, Inc.*, 921 F.3d 1, 26–27 (2nd Cir. 2019).

Section 3730(c)(5) ensures that when the Government chooses an alternate path to recover for the same fraud alleged in a *qui tam* case, the relator's rights follow the Government's recovery. Treating a Section 3730(c)(2)(A) intervention and dismissal as functionally equivalent to a Section 3730(b)(4)(B) declination for purposes of Section 3730(c)(5) gives effect to the statute's text, structure, and purpose, is consistent with *Polansky's* recognition of dismissal authority, and prevents the erosion of relator protections Congress enacted to advance the FCA's enforcement goals.

Ultimately, Relators may argue to the Court that they have the right to recover from an alternate remedy that the Government has chosen to pursue after dismissal of this action. For now, Relators ask the Court only to retain jurisdiction after dismissal to hear that argument. There is nothing unusual in asking the Court to do so.

### III. RELATORS' REQUEST THAT THE COURT RETAIN JURISDICTION FOR A POTENTIAL ALTERNATE REMEDY AND RELATOR SHARE CLAIM DOES NOT REQUIRE THE COURT TO DETERMINE THE VALIDITY OF SUCH A CLAIM NOW, NOR DO RELATORS SEEK EXTRAORDINARY RELIEF.

Relators herein do not seek a determination of their rights to share in any Government recovery. That determination would be premature. Instead, Relators ask the Court only to retain jurisdiction to hear such a claim if the circumstances warrant.

The Relators have found no case holding that a court should decline to exercise jurisdiction to hear a section 3730(c)(5) alternate remedy motion following a section 3730(c)(2)(A) dismissal.

That is so because Relators' request is not extraordinary. Courts in FCA (and other) cases routinely retain jurisdiction after dismissals with and without prejudice for a multitude of reasons. *See, e.g.*, *United States ex rel. Barajas, 258 F.3d 1004* (although Ninth Circuit did not expressly address jurisdictional basis, relator filed alternate remedy motion in dismissed FCA action, district court exercised jurisdiction, and Ninth Circuit ruled in favor of relator, showing the accepted mechanism for asserting alternate remedy rights after dismissal); *United States ex rel. Shutt v. Cmty. Home & Health Care Servs., Inc.*, 550 F.3d 764 (9th Cir. 2008) (holding relator share claim was collateral to judgment and court's retention of jurisdiction over claim after grant of partial summary judgment did not interfere with finality and appealability of order); *United States ex rel. Birkle, et al. v. Medtronic PLC, et al.*, case no. 2:19-cv-10960-MEMF-SK, Dkt. no. 103 (Order Granting Stipulation of Dismissal), at 2 (C.D. Cal. Dec. 11, 2025) (dismissing an FCA case with prejudice as to the Relator and without prejudice to the government while retaining jurisdiction to enforce terms of settlement between Relator and defendants); *United States ex rel. Singh v. Paksn, Inc. et al.*, case no. 2:15-cv-09064-SB-AGR, Dkt. no. 472 (Order of Dismissal), at 2 (C.D. Cal. Nov. 17, 2023) (dismissing FCA case with prejudice as to the United States while "retain[ing] jurisdiction to consider whether to allow Relator's claims under 31 U.S.C. § 3730(d)

to a share of the proceeds of the Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs."); *United States ex rel. Estate of Turner v. Gardens Pharmacy, LLC*, case no. 1:18-cv-00338-HSO-BWR, Dkt. no. 154 (Final Judgment), at 1–2 (S.D. Miss. Jan. 19, 2023) (dismissing an FCA case with prejudice as to the relator while "retain[ing] jurisdiction to adjudicate any outstanding issues regarding Relator's entitlement to a share of the proceeds from this litigation.").

## IV. RELATORS' REQUEST THAT THE GOVERNMENT ADVISE THEM OF PAYMENTS RECEIVED FROM A DISMISSED DEFENDANT IS REASONABLE, ENVISIONED UNDER THE FCA, AND CONSISTENT WITH THE GOVERNMENT'S OWN POLICIES AND PRACTICES.

As a threshold matter, no legitimate basis exists for the Government to treat as confidential the fact or amount of any payment it receives from a dismissed Defendant.

First, the Relators' statutory right to a share of proceeds under Section 3730(c)(5) is meaningless without knowledge of what the Government has received.

Moreover, the FCA's own statutory scheme contemplates that recovery by Government from a Defendant named in a qui tam action will become part of the public record. Section 3730(c)(2)(B) requires judicial approval of any settlement over the relator's objection after a hearing at which the court determines the settlement is "fair, adequate, and reasonable," a proceeding that, absent a specific sealing order for good cause, will occur on the public docket.

DOJ's own settlement policies reinforce this principle, prohibiting secret arrangements that would allow a Defendant's payment to bypass a court review or public scrutiny. Any such settlement would be inconsistent with the transparency the law requires when the Government receives money from a private party. *See* DOJ Justice Manual § 1-17.000, at II.B(2) (in the context of a third-party payment, "[w]here the settlement is not subject to court approval, components shall have discretion in adopting an appropriate process to make a copy of the settlement

publicly available and to accept public input, so long as that process includes promptly posting the final agreement in an appropriate public website location when the settlement becomes final.")

Finally, the Government's own longstanding practice confirms that it has no confidentiality interest to protect here. DOJ routinely and affirmatively publicizes many (though not all) FCA settlements and judgments through press releases that identify the defendant, the amount paid, and details about the allegations and evidence. The press releases also routinely provide an internet link to access the full settlement agreement. DOJ reports its aggregate FCA recoveries to Congress and the public every year. Commentators have specifically noted that "for decades, the Department of Justice (DOJ) has issued a steady flood of press releases announcing False Claims Act (FCA) settlements," touting both the defendant and the dollar figure recovered as a matter of deterrence policy. Jacob T. Elberg, *Health Care Fraud Means Never Having to Say You're Sorry*, 96 WASH. L. REV. (Issue 2) 371 (2021). Having made public disclosure of defendant payments and settlement agreements its own standard practice -- indeed, a centerpiece of its enforcement and deterrence messaging -- the Government cannot credibly assert an interest in withholding that same information from Relators, who are statutorily entitled to protect their interest in any recovery obtained through an alternate remedy motion under 31 U.S.C. § 3730(c)(5).

As the Ninth Circuit recently stated in *Ling*, "[w]hether or not an alternate remedy takes the place of the original FCA suit can involve a fact-intensive evaluation. Under some circumstances, there could be issues of collusion or bad faith, which are relevant to whether a remedy took the place of the FCA suit." *Ling*, 2026 WL 2871734 at *5 (cleaned up).

Again, Relators do not accuse the Government of bad faith, nor do they now know whether a desire to eliminate the Relators' legitimate share rights may play a

role in the Government's dismissal of their FCA case. However, the Ninth Circuit makes clear that Relators should have a right to learn the facts of a future settlement.

## V. ALTHOUGH AN IN-PERSON HEARING MAY NOT BE NECESSARY FOR THIS MOTION, THE NINTH CIRCUIT'S PRECEDENT THAT RELATORS ARE ENTITLED TO A HEARING ON A MOTION TO DISMISS NEVERTHELESS REMAINS IN EFFECT.

The FCA provides that "[t]he Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(b)(2)(A). Contrary to the Government's blanket assertion that "Courts of Appeals have consistently held that no in-person hearing is required when the Government seeks pre-answer dismissal of a qui tam action under Rules 41(a)(1)," (Dkt. 21-1 at ECF 24–5) the Ninth Circuit has issued no such holding.[7]

Indeed, in the three years since *Polansky* was decided, the Ninth Circuit has apparently not addressed how courts within its jurisdiction should reconcile *Polansky* with *United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corporation*, 51 F.3d 1139 (9th Cir. 1998), which confirmed that relators are entitled to a hearing under 31 U.S.C. § 3730(c)(2)(A).

Nonetheless, in their partial opposition to this motion, Relators do not oppose the dismissal of the case and believe the Court can decide to retain jurisdiction without a hearing on that issue.

As stated above, Relators request that: (1) the Court retain jurisdiction to hear a Section 3730(c)(5) motion for an alternate remedy and a Section 3730(d) motion for a relator share in the event that the Government recovers against any of the dismissed Defendants, and Relators, after a review of the circumstances, believe

---

[7] The Government's motion cites only to out-of-circuit authority for this proposition. See Dkt. 21-1 at ECF 7–8.

such motions are appropriate; and (2) the Court order the Government to inform Relators of any payments received from a dismissed Defendant and provide them with the settlement agreement.

## CONCLUSION

Relators recognize that following the *Polansky* decision, the Government has broad authority to dismiss their *qui tam* complaint over Relators' objections. However, *Polanksy* does not address or alter the alternate remedy provision of the FCA, which remains intact. Relators request that the Court (1) retain jurisdiction to hear a potential alternate remedy and relator share motion if the facts and circumstances warrant, and (2) order the Government to advise Relators of any payments received from a dismissed Defendant and provide them with the settlement agreement.

A proposed order accompanies this filing.

Dated: October 28, 2026

/s/ Michael A. Hirst
Michael A. Hirst, Esq.
michael.hirst@hirstlawgroup.com
Marisela Bernal, Esq.
marisela.bernal@hirstlawgroup.com
Hirst Law Group, P.C.
200 B Street, Suite A
Davis, California 95616
P: (530) 756-7700
F: (530) 756-7707

Counsel for Plaintiff-Relators
Sunil Wadhwa and Emily Prins

The undersigned, counsel of record for Plaintiff-Relators Sunil Wadhwa and Emily Prins, certifies that this brief contains 5,366 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 28, 2026

/s/ Michael A. Hirst
Michael A. Hirst, Esq.