Michael A. Hirst (CA Bar No. 131034)
michael.hirst@hirstlawgroup.com
Marisela Bernal (CA Bar No. 329589)
marisela.bernal@hirstlawgroup.com
HIRST LAW GROUP, P.C.
200 B Street, Suite A
Davis, CA 95616
Telephone: (530) 756-7700
Facsimile: (530) 756-7707

Counsel for Plaintiff-Relators
Sunil Wadhwa and Emily Prins

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF ILLINOIS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF TENNESSEE, AND STATE OF TEXAS ex rel. SUNIL WADHWA and EMILY PRINS,

Plaintiffs,

v.

PROGRESS MEDICAL LLC; AMNIO TECHNOLOGY, LLC; BIOLAB SCIENCES, INC.; BIOLAB HOLDINGS, INC.; BLS LABS, LLC; BIOSTEM TECHNOLOGIES, INC.; DIRECT BIOLOGICS, INC. f/k/a DIRECT BIOLOGICS, LLC; HEALTHTECH WOUND CARE, INC.; LEGACY MEDICAL CONSULTANTS, LP; MLM BIOLOGICS, INC.; PINNACLE TRANSPLANT TECHNOLOGIES, LLC; PRECISE BIOSCIENCE CORPORATION; REDDRESS USA, INC.; ROYAL BIOLOGICS, INC.; SAMARITAN BIOLOGICS LLC; STRATUS BIOSYSTEMS, LLC d/b/a CELLGENUITY REGENERATIVE SCIENCE; SURGENEX, LLC; XTANT

**Civil Action No: 2:25-CV-07049-SVW (AGRx)**

**DECLARATION OF MICHAEL A. HIRST IN SUPPORT OF RELATORS' PARTIAL OPPOSITION TO MOTION TO DISMISS**

**FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED [ ]**

| |
|---|
| MEDICAL HOLDINGS, INC.; BLS SALES AND MARKETING, LLC; WORLD REACH HEALTH, LLC; VENTURE MEDICAL LLC; AND DOES 1–20,<br>Defendants. |

I, Michael A. Hirst, declare as follows:

1. I am an attorney licensed to practice law in the State of California and represent Relators Sunil Wadhwa and Emily Prins ("Relators") in this action. I submit this Declaration in support of Relators' Partial Opposition to the United States' Motion to Dismiss.

2. In 1990, I became an Assistant United States Attorney in the Eastern District of California.

3. In 1997, I was promoted to Co-Chief of the Civil Division and Chief of Affirmative Civil Litigation for that office. In that capacity, I supervised all civil cases brought by the United States in the 34 counties within the district, including all False Claims Act ("FCA") investigations and actions. I held that position for over 8 years, until I entered private practice in 2005.

4. My practice, both for the majority of my time at the U.S. Attorney's Office and essentially exclusively since then in private practice, has specialized in FCA and other whistleblower actions, first in representing the United States and then in representing whistleblowers.

5. In my experience as an AUSA and later as a supervising attorney for the U.S. Attorney's Office, I handled and supervised many FCA cases involving prior-filed *qui tam* complaints. During my tenure, AUSAs were expected to obtain partial lifts of the seal for the purpose of informing relators that another *qui tam* case involving the same claims and defendants had been filed.

6. Similarly, in my experience as a private attorney representing relators in FCA cases, I have had numerous cases in which I represented both first-filed

relators and subsequently-filed relators, including one case in which I have been asked to represent a ninth-filed relator and, with DOJ's knowledge, am working collectively with the other relators' counsel. In each of those cases, the Government obtained a partial lift of the seal to advise relators of prior- and subsequently-filed cases. And, in each of those cases, the Government sent letters to counsel advising of the multiple complaints filed against the same defendant. The typical Government letter, including multiple letters received by the undersigned, contains the following language encouraging counsel to share their information with the other relators: "Our expectation is that counsel will provide each other with information regarding the allegations against [defendant name], possibly by providing redacted complaints. Please do not hesitate to call if you have any questions."

7. After receiving a typical "multiple relator" letter from DOJ advising counsel of multiple cases filed against the same defendant, it is my normal practice to exchange complaints, occasionally redacted as necessary to comply with the court's partial unsealing order, so that each relator and their counsel may determine whether the FCA's first-to-file provisions applies to each claim and defendant. The filing dates, the names of the defendants, the claims asserted, and the plaintiff states included are all pertinent details for that assessment.

8. In the majority of such instances, though not always, my clients and the other relators have agreed to work together in each other's cases. These arrangements are not only beneficial to the relators by increasing the strength of their litigation team, but also beneficial to the Government by increasing the likelihood of success and potentially avoiding first-to-file litigation.

9. Relators filed this FCA *qui tam* case on July 28, 2025. On the same day, Relators served the complaint on the Government and a statement of substantially all material evidence and information in their possession, including twenty-four (24) exhibits.

10. On September 29, 2025, the court granted an extension of the seal to December 30, 2025.

11. On October 15, 2025, Attorney Marisela Bernal of our office and I participated in separate interviews of the Relators at the U.S. Attorney's Office for the Central District of California. Assistant U.S. Attorneys Cory Webster and S. Desmond Jui led the interview. During the interviews, AUSA Cory Webster explained to Relators that if the Government intervened, it would prosecute the case. If the Government declined to intervene, Relators' counsel would prosecute the case. No mention was made of any prior filed case or existing investigation, and the Government did not suggest that it would move to dismiss the case.

12. On November 18, 2025, Ms. Bernal and I participated in a video Teams call with Mr. Webster, Mr. Jui, and Department of Justice Trial Attorney Jonathan Hoerner. During that call, Mr. Hoerner stated, as I recall and as quoted in Ms. Bernal's contemporaneous notes of the call: "Your complaint was very thorough. Thank you for that." I told Mr. Hoerner that we have just taken written notes of his compliments and hoped that those statement would be reflected in a relator share determination at the end of the case. I told him: "We are counting on you." Mr. Hoerner smiled and said he understood.

13. During the call on November 18, 2025, Mr. Hoerner also informed Relators' counsel that the government intended to send a letter informing Relators that there were active investigations against some, but not all, of the Defendants in this case. Mr. Hoerner also indicated that some investigations were based on other filed qui tam cases. Mr. Hoerner identified the Defendants named in the complaint for which other investigations or cases had been filed, but he declined to provide any information about such investigations or other cases. Mr. Hoerner stated, and we discussed, that he was not aware of any case or investigation against the other Defendants that would not be listed in the letter. The Defendants who were not the

subject of a prior case or investigation were: Redacted [redacted] Mr. Hoerner requested that the Relators voluntarily dismiss their claims against the Defendants in previous investigations or cases he had identified and that would be listed in the letter he promised to send.

14. During the call, regarding any Defendants for which the Government claimed there were prior-filed cases, I requested that the government obtain a partial lift of the seal in those cases to inform the relators in each case of the existence of the other *qui tam* cases. I explained that the information provided in a partial seal lift, particularly the exchange of the FCA complaints, would allow counsel to advise their client Relators and to make an informed decision whether the first-to-file rule applied to included plaintiff states, Defendants, and claims. Mr. Hoerner stated that he would take my request for a partial lift into consideration.

15. After the call, I received an e-mail from Mr. Hoerner with a letter dated November 18, 2025. Attached hereto as Exhibits 1 and 2, respectively, are true and correct copies of that e-mail and letter. The letter states in part:

> The United States Department of Justice, Civil Division commenced False Claims Act investigations involving the following entities prior to receipt of Wadhwa's and Prins' qui tam complaint:

Redacted [redacted]

The letter does not include the following Defendants, also identified above in

paragraph 13: Redacted [redacted]. Although the letter states that the "'first-to-file' rule may have particular applicability here," it does not assert facts demonstrating that a qui tam complaint alleging the same fraud against any of the same Defendants had been filed prior to Relators' FCA complaint. In particular, it does not state the filing dates, allegations, included plaintiff states, or names of Defendants in any other FCA complaints filed against any of the Defendants. The letter makes no mention of a partial lift of the seal.

16. On December 23, 2025, I received an e-mail from Mr. Webster requesting confirmation that the Relators did not oppose the government's request for an extension of the seal. I requested but did not receive any updates on the case at that time. Relators consented to the United States' request for an extension of the seal. Attached hereto as Exhibit 3 is a true and correct copy of that e-mail chain.

17. On March 24, 2026, I received an e-mail from Mr. Jui requesting confirmation that the Relators did not oppose the government's further request for an extension of the seal. Upon request, Mr. Jui suggested a phone call to discuss updates on the case. Attached hereto as Exhibit 4 is a true and correct copy of the e-mail chain.

18. On March 25, 2026, Ms. Bernal and I participated in a phone call with Mr. Jui. Mr. Jui inquired whether Relators had decided to voluntarily dismiss. I responded that I needed the additional information that I had previously requested to assess whether I should advise my clients that the first-to-file rule applied. I asked if a partial seal lift had been obtained, and Mr. Jui responded that he would need to ask Mr. Hoerner if that had occurred. I reiterated that a partial lift of the seal would allow the government to share sufficient information so that the Relators could make

an informed decision whether to voluntarily dismiss the Defendants listed in Mr. Hoerner's letter.

19. On March 28, 2026, I informed Mr. Jui that I had obtained the Relators' consent for the extension of the seal.

20. On April 16, 2026, the court granted an additional extension of the seal to July 16, 2026. The order indicated that no further extensions would be granted. Relators were not served with the United States' request for the extension.

21. On April 22, 2026, I sent an e-mail to Mr. Jui and Mr. Hoerner to inquire whether they had yet obtained a partial lift of the seal. Mr. Hoerner responded that he did not have additional information to share at that time. Attached as Exhibit 5 is a true and correct copy of that e-mail chain.

22. On July 15, 2026, I received an e-mail from Mr. Hoerner, which states, "Desmond and I have completed our investigation of the above matter. Please let us know your availability for a call today or tomorrow to discuss our next steps." Attached hereto as Exhibit 6 is a true and correct copy of that e-mail.

23. On July 15, 2026, Ms. Bernal and I participated in a telephone call with Mr. Jui and Mr. Hoerner. During the call, Mr. Jui and Mr. Hoerner informed Relators' counsel that the call was intended to be a Local Rule 7-3 conference regarding the government's intention to file a notice of intervention for the sole purpose of filing a motion to dismiss the case in its entirety. Until that call, Relators and their counsel were unaware that the United States had intended for the call to be a Local Rule 7-3 conference or that the United States intended to dismiss *all* claims against *all* Defendants, including Defendants for which no prior investigation existed and no prior *qui tam* case had been filed. Mr. Hoerner stated that the Government would not oppose a voluntary dismissal without prejudice by Relators as to all Defendants and claims. I responded that Relators would take that under consideration but needed more information to adequately assess the request.

24. To date, I have not received any indication that the United States had requested a partial lift of the seal in this case or in any potentially related *qui tam* case. Further, the Government has provided no explanation why Relators' request for a partial lift of the seal was disregarded.

25. Due to the lack of information from the Government, my office has conducted independent research for publicly available information that would support the United States' position that one or more FCA cases had been filed against any of the named Defendants in this action prior to the filing of the Complaint (Dkt. 1) on July 28, 2025. Numerous Defendants operate their businesses nationwide, and the FCA has broad venue provisions, so it is conceivable that an FCA complaint against any Defendant could have been filed in any district court in the United States. Of course, such an FCA case would be filed under seal and not available as public information.

26. To date, diligent searches by my office have not discovered any public record to corroborate the United States' claim that another FCA complaint has been filed against any of the named Defendants prior to July 28, 2025. As such, I currently lack the information necessary to make an independent assessment of whether the first-to-file rule applies.

27. On July 22, 2026, I sent an e-mail to Mr. Jui and Mr. Hoerner with a proposed stipulation for dismissal without prejudice. Attached hereto as Exhibit 7 and 8[1], respectively, are true and correct copies of that e-mail chain and the proposed stipulation. As noted in Exhibits 7–8, Relators advised the Government that they are willing to voluntarily dismiss the case in its entirety without prejudice if the

[1] My July 22, 2026 e-mail as shown in Exhibit 7 attached a Word version of the proposed stipulation with no watermark. Exhibit 8 is a copy of that same stipulation with a "DRAFT" watermark to avoid potential confusion in the court record because the proposed stipulation was never filed. Other than the addition of the "DRAFT" watermark, no modifications have been made to the proposed stipulation. Exhibit 8 is otherwise a true and correct copy of the attachment to the e-mail shown in Exhibit 7.

Government agreed to stipulate that the court would retain jurisdiction of Relators' potential claims to a share of an alternate remedy under U.S.C. § 3730(c)(5). Mr. Jui responded, "The U.S. does not agree to the stipulation and believes the appropriate course of action is for Relators to voluntarily dismiss the case unconditionally and without prejudice. Absent voluntary dismissal, the U.S. anticipates proceeding with its motion to dismiss pursuant to the FCA, 31 U.S.C. § 3730(c)(2)(A)." Exhibit 7.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. If called upon to testify as to the facts set forth herein, I could and would testify competently thereto. This declaration was executed on October 28, 2026, in Davis, California.

/s/Michael A Hirst
Michael A. Hirst